UNITED STATES DISTRICT COURT
EASTERN DISTIRCT OF LOUISIANA

| | |
|---|---|
| BENJAMIN WOOD, IRENE BARBRE, and LYNNETTE ERVIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>V.<br><br>WILCO LIFE INSURANCE COMPANY d/b/a Conseco Life Insurance Company<br><br>Defendant | CIVIL ACTION:<br><br>JUDGE:<br><br>MAGISTRATE: |

**CLASS ACTION COMPLAINT**

Representative Plaintiffs Benjamin Wood (hereinafter referred to as "Mr. Wood"), Irene Barbre (hereinafter referred to as "Ms. Barbre"), and Lynnette Ervin (hereinafter referred to as "Ms. Ervin") for their complaint against Defendant Wilco Life Insurance Company d/b/a Conseco Life Insurance Company ("Conseco") allege the following:

**PARTIES**

1. Plaintiff Benjamin Wood is, and at all times herein mentioned was a resident within this district and citizen of the State of Louisiana. In February 1999, Mr. Wood became the insured under a universal life insurance policy ("Wood Policy") number 2300205494 issued by Conseco. Mr. Wood is the owner of the Wood Policy. When originally issued, and continuing through the present, the Wood Policy had a death benefit value of $100,000.

2. Plaintiff Irene Barbre is, and at all times herein mentioned was a resident within this district and citizen of the State of Louisiana. In May 1999, Betty Honore, the mother of Ms. Barbre, became the insured under a universal life insurance policy ("Barbre Policy")

number 2300219872 issued by Conseco. Ms. Barbre is the owner of the Barbre Policy. When originally issued, and continuing through the present, the Barbre Policy had a death benefit value of $25,000.

3. Plaintiff Lynnette Ervin is, and at all time herein mentioned was a resident and citizen of the State of Mississippi. In November 1996, Ms. Ervin became the insured under a universal life insurance policy ("Ervin Policy") number 2300110203 issued by Conseco. Ms. Ervin is the owner of the Policy. When originally issued, and continuing through the present, the Ervin Policy had a death benefit value of $90,000.

4. Defendant Conseco is a corporation duly organized and existing under and by the virtue of the laws of the State of Indiana and transacting the business of insurance in the State of Louisiana and within this judicial district.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) by virtue of the diversity of citizenship between Plaintiffs and Conseco. The amount in controversy for Plaintiffs and member of the class exceeds the sum of $75,000, exclusive of interest and costs. Jurisdiction is also proper under 28 U.S.C. § 1332(d). This Court also has jurisdiction under 28 U.S.C. § 2202.

6. Venue is proper in this district under 28 U.S.C. § 1391(a)(1)(2) by virtue of (i) the residence of certain Plaintiffs in this district and (ii) that a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

7. This is a class action brought by Plaintiffs individually and on behalf of the owners of universal life insurance policies provided by Conseco.

8. The Conseco universal life insurance policies provided both an established death benefit and a savings element with a cash accumulation value.

9. The below provided facts addressing each Plaintiff's association with Conseco demonstrates a continued pattern of action where Conseco accepted premium payments for universal life insurance policies, yet failed to apply such payments to the cash accumulation value and interest credited to these policies. Conseco's actions are in violation of the terms of these policies and result in an illegal financial benefit to Conseco.

### Facts Concerning Benjamin Wood

10. On February 17, 1999, Mr. Wood obtained the Wood Policy, which was funded through automatic withdrawals from his government allotment payroll while working for the U.S. Department of Veterans Affairs. These premium payments were accepted by Conseco and caused the cash accumulation value and interest credited to the Wood Policy to increase over time.

11. Starting in 2015, for reasons unknown to Mr. Wood, Conseco frequently did not apply Mr. Wood's premium payments which were automatically withheld from his government allotted payroll to the Wood Policy.

12. Rather than applying Mr. Wood's automatic premium payments to the Wood Policy, Conseco used the Wood Policy's cash accumulation value to pay for the premium due, while effectively lowering the interest credited to the Wood Policy as a result.

13. As way of example, and demonstrating only a selected period of time, the following dates, payments, fees and insurance deductions are what Conseco alleges were applied to the Wood Policy:

| DATE | PAYMENTS | FEES | INSURANCE DEDUCTIONS |
|---|---|---|---|
| 05-22-15 | $40.00 | | |
| 06-05-15 | $40.00 | | |
| 06-17-15 | | $5.00 | $37.69 |
| 06-19-15 | $40.00 | | |
| 07-17-15 | | $5.00 | $37.69 |
| 08-17-15 | | $5.00 | $37.70 |
| 09-17-15 | | $5.00 | $37.72 |
| 10-17-15 | | $5.00 | $37.73 |
| 11-17-15 | | $5.00 | $37.74 |
| 12-17-15 | | $5.00 | $37.76 |
| 02-17-16 | | $5.00 | $37.77 |

14. Conseco has continually accepted the premium payments that were provided through automatic withdrawals from Mr. Wood's government allotment payroll, but has failed to account for these payments within the Wood Policy.

15. As a result of Conseco's actions, Conseco has not only benefited from Mr. Wood's automatic premium payments that remain unaccounted for, but it has also reduced the Wood Policy's cash accumulation value and reduced the amount of interest credited to the Wood Policy (despite such premiums having been actually paid).

16. These cash value deductions are the result of Conseco erroneously asserting that Mr. Wood failed to provide timely premium payments.

## Facts Concerning Irene Barbre

17. On May 10, 1999, Ms. Barbre obtained the Barbre Policy, which was funded through automatic withdrawals from her government allotment payroll while working for the U.S. Department of Housing and Urban Development. These premium payments were accepted by Conseco and caused the cash accumulation value and interest credited to the Barbre Policy to increase over time.

18. Starting in 2015, for reasons unknown to Ms. Barbre, Conseco frequently did not apply Ms. Barbre's premium payments which were automatically withheld from her government allotted payroll to the Barbre Policy.

19. Rather than applying Ms. Barbre's automatic premium payments to the Barbre Policy, Conseco used the Barbre Policy's cash accumulation value to pay for the premium due, while effectively lowering the interest credited to the Barbre Policy as a result.

20. Ms. Barbre contacted Conseco on numerous occasions in order to amicably resolve this mistake, but Conseco refused to correct its error.

21. Because of Conseco's failure to comply with the terms of the Barbre Policy, and left with few other options, Ms. Barbre filed a complaint with the Louisiana Department of Insurance.

22. As a result of Ms. Barbre's actions, on June 2, 2017, Ms. Barbre received a letter from Conseco stating that all premium payments were now discovered and applied to the Barbre Policy. However, according to documents received by Ms. Barbre from Conseco, certain payments were not applied when received, and Ms. Barbre has still not been provided with a complete record of all received payments from January 2015 to present.

23. At this time, Conseco also notified Ms. Barbre that she need to increase her premium payments because the cost of insurance and fees were now approximately $90.00 per month. Upon receipt of this information, Ms. Barbre increased her automatic premium payments to $187.00.

24. In order to verify that Conseco is processing these payments correctly, Ms. Barbre contacted Conseco to only be told by a Conseco service representative that the company

had not received the $187.00 automatic premium payments and that the last payment posted was on May 19, 2017.

25. Conseco has continually accepted the premium payments that were provided through automatic withdrawals from Ms. Barbre's government allotment payroll, but has failed to account for these payments within the Barbre Policy.

26. Conseco has not only benefited from Ms. Barbre's automatic premium payments that remain unaccounted for, but it has also reduced the Barbre Policy's cash accumulation value and reduced the amount of interest credited to the Barbre Policy (despite such premiums having been actually paid).

27. These cash value deductions are the result of Conseco erroneously asserting that Ms. Barbre failed to provide timely premium payments.

### Facts Concerning Lynnette Ervin

28. On November 10, 1996, Ms. Ervin obtained the Ervin Policy, which was funded through automatic withdrawals from her government allotment payroll while working for the U.S. Internal Revenue Service. These premium payments were accepted by Conseco and caused the cash accumulation value and interest credited to the Ervin Policy to increase over time.

29. Starting in 2015, for reasons unknown to Ms. Ervin, Conseco frequently did not apply Ms. Ervin's premium payments which were automatically withheld from her government allotted payroll to the Ervin Policy.

30. Rather than applying Ms. Ervin's automatic premium payments to the Ervin Policy, Conseco used the Ervin Policy's cash accumulation value to pay for the premium due, while effectively lowering the interest credited to the Ervin Policy as a result.

31. As way of example, and demonstrating only a selected period of time, the following dates, payments, fees and insurance deductions are what Conseco alleges were applied to the Ervin Policy:

| DATE | PAYMENTS | FEES | INSURANCE DEDUCTIONS |
|---|---|---|---|
| 05-27-15 | $28.00 | | |
| 06-10-15 | | $5.00 | $24.14 |
| 06-23-15 | $28.00 | | |
| 07-10-15 | | $5.00 | $24.14 |
| 08-10-15 | | $5.00 | $24.14 |
| 09-10-15 | | $5.00 | $24.14 |
| 10-10-15 | | $5.00 | $24.14 |

32. Conseco has continually accepted the premium payments that were provided through automatic withdrawals from Ms. Ervin's government allotment payroll, but has failed to account for these payments within the Ervin Policy.

33. Ms. Ervin contacted Conseco in March 2017 in order to amicably resolve this mistake, but Conseco has ignored her concerns.

34. As a result of Conseco's actions, Conseco has not only benefited from Ms. Ervin's automatic premium payments that remain unaccounted for, but it has also reduced the Ervin Policy's cash accumulation value and reduced the amount of interest credited to the Ervin Policy (despite such premiums having been actually paid).

35. These cash value deductions are the result of Conseco erroneously asserting that Ms. Ervin failed to provide timely premium payments.

## CLASS ACTION ALLEGATIONS

36. Plaintiffs brings Count I, Count II, and Count III as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure on behalf of a class defined as:

> **All persons who provided automatic premium payments for a Conseco universal life insurance policy from January 1, 2015 to present, and where such payments, upon receipt, were not applied to the policy.**

Excluded from the Class are Conseco and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

37. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38. **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The members of the Class are so numerous that their individual joinder herein is impracticable. Upon information and belief, Class members number in the thousands. The precise number of Class members and their addresses are presently unknown to Plaintiffs, but may be ascertained from the records of Defendant. Class members may be notified of the pendency of this action by mail, e-mail, internet postings, and/or publication.

39. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include: Did Conseco accept automatic premium payments to pay for universal life insurance policies? Did Conseco fail to apply automatic premium payments to universal life insurance policies? Did Conseco deduct the cash value of universal life insurance policies despite receiving automatic premium payments when due?

40. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members. Similar

or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

41. **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiffs' claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through Defendant's uniform conduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

42. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seeks to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiffs and their counsel.

43. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1)**. Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate action could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

44. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**. Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

45. **Superiority – Federal Rule of Civil Procedure 23(b)(3)**.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

## COUNT I – BREACH OF CONTRACT

46. Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

47. At all relevant times, Plaintiffs and the Class members have paid to Conseco premiums through automatic withdrawals from their allotment payroll due under each person's policy

and as established at the inception of each policy. Plaintiffs and Class members have performed all their obligations under these policies.

48. As alleged above, Conseco owed duties and obligations to Plaintiffs and Class members, among others, to apply premium payments upon receipt, resulting in satisfaction of a portion or all of any monthly charges, and/or an increase in the accumulated cash value and interest owed for each policy.

49. Conseco materially breached the terms and provisions of these policies by failing to apply premium payments upon receipt and by failing to satisfy a portion or all of any monthly charges, and/or increase in the accumulated cash value and interest owed for each policy.

50. As a direct and proximate result of Conseco's conduct and material breaches, Plaintiffs and the Class members have sustained and continue to sustain injuries.

51. In addition, unless Conseco is preliminarily and permanently enjoined from its continued failure to apply premium payments received, Plaintiffs and Class members will suffer severe and irreparable injuries for which they have no adequate remedy of law.

**COUNT II – CONVERSION**

52. Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

53. At all times herein mentioned, Plaintiffs and the Class members are entitled to have their premiums paid towards these policies be applied pursuant to the terms of their policies.

54. Defendant, despite having knowledge that these premiums should have been applied to the Plaintiffs and Class member's policies, refuse to do so and have reaped financial gain from its wrongful retention of Plaintiffs' and Class members' premium payments.

55. As a direct and proximate cause of Defendant's conversion of Plaintiffs' premium payments, Plaintiffs and the Class members have suffered damages, the full nature and extent of which are presently unknown to Plaintiffs, which will be determined according to proof at trial.

56. Defendant's acts alleged above were willful, wanton, malicious, and oppressive, and therefore justify the awarding of exemplary and punitive damages.

### COUNT III – UNJUST ENRICHMENT

57. Plaintiffs refers to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

58. Plaintiffs and Class members conferred upon Defendant an economic benefit, in the nature of premium payments for life insurance policies.

59. Premium payments provided by Plaintiffs and Class members that were accepted by Defendant were not then applied to the corresponding life insurance policy by Defendant.

60. The economic benefit for Defendant's failure to apply the premium payments resulted in Defendant incurring unlawful profits.

61. It would be inequitable and unjust for Defendant to be permitted to retain the premium payments provided by Plaintiffs and Class members, given Defendant's failure to satisfy its obligation to apply such premium payments to the life insurance policy's cash accumulation value.

62. Plaintiffs and Class members are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business practices.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and Class members pray for relief and judgment against Defendant as follows:

1. Preliminary and permanent injunctive relief requiring Conseco, its representatives, and all others acting with it or on its behalf to apply premium payments made by Plaintiffs and Class members and to adjust the cash accumulation value and interest credited of each person's policy to accurately reflect such timely premium payments;

2. For damages according to proof;

3. That Plaintiffs and the Class members be awarded punitive damages sufficient to deter and make an example of Defendant;

4. Attorneys' fees expended and incurred in recovery of benefits and enforcement of the terms of the policies against Conseco in a sum to be determined at the time of trial or as appropriate;

5. Costs of suit incurred herein;

6. An award of prejudgment and post-judgment interest; and

7. Such other and further relief as deemed and appropriate by this Court.

## JURY DEMAND

Plaintiffs demands trial by jury on all issues for which a jury trial is allowed.

Dated: July 10, 2017

[SIGNATURE ON NEXT PAGE]

Respectfully Submitted:

*/s/ Preston L. Hayes*
_____
GEORGE B. RECILE (#11414)
PRESTON L. HAYES (#29898)
RYAN P. MONSOUR (#33286)
MATTHEW A. SHERMAN (#32687)
PATRICK R. FOLLETTE (#34547)
ZACHARY R. SMITH (#37316)
*Chehardy, Sherman, Williams, Murray,*
*Recile, Stakelum & Hayes, L.L.P.*
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone: (504) 833-5600
Facsimile: (504) 613-4528